AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas

United States Courts
Southern District of Texas
FILED

*July 17, 2020*

David J. Bradley, Clerk of Court

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

5774 Hirondel Street, Houston, Texas 77033

)
)
)
)
)
)

Case No. **4:20mj1269**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ Texas _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2251(a) | Sexual exploitation of children |
| 18 U.S.C. § 2252 (a)(1) / (a)(2) | Production / Distribution of Child Exploitation Material |
| 18 U.S.C. § 2252A(a)(2)/ (a)(5) | Distribution / Possession of Child Exploitation Material |

The application is based on these facts:

(See Attached Affidavit)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Tony P. Cattelan, Special Agent, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ Telephone _____ *(specify reliable electronic means)*.

Date:   07/17/2020

_____
*Judge's signature*

City and state:  Houston, Texas

Peter Bray, United States Magistrate Judge
_____
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF:** | § | |
| 5774 Hirondel Street | § | Case No. _____ |
| Houston, Texas 77033 | § | |

**AFFIDAVIT IN SUPPORT OF APPLICATION**

**I.    Introduction:**

Your Affiant, Tony P. Cattelan, being duly sworn, deposes and says:

**A.    Introduction and Agent Background:**

1.    I make this affidavit in support of an application for a search warrant for the residence located at 5774 Hirondel Street, Houston, Texas 77033, including its curtilage and the associated vehicle, namely a blue 2014 Nissan Sentra, Texas license plate MBV0250 registered to the premises (only if found on the premises) further described in Attachment A. As set forth herein, there is probable cause to believe that in that property there exists evidence of a crime, contraband, fruits of a crime, and other items illegally possessed in violation of Title 18, United States Code, Sections 2252 and 2252A, et seq, which are further described in Attachment B.

2.    I am a Special Agent of the Federal Bureau of Investigation (FBI). I have been a Special Agent of the FBI since 2013. I am charged with the duty of investigating violations of the laws of the United States, collecting evidence in cases in which the United States is or may be a party in interest, and performing other duties imposed by law. During my assignment with the FBI, I have participated in the execution of search warrants for documents and other evidence, including computers and electronic media, in cases involving child pornography and the sexual exploitation of children. I have investigated cases involving child pornography and the sexual exploitation of children in which computers are used as the means for receiving, transmitting, and storing child pornography as defined in Title 18, United States Code, Section 2256. Additionally, I have consulted with other Special Agents and law enforcement officers proficient in

1

Crimes against Children investigations regarding this matter.

**B.  Facts and Circumstances:**

3.      The statements in this affidavit are based upon my investigation, information provided to your Affiant by sworn law enforcement officers, public source and business records, and my experience and background as a Special Agent of the FBI. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of a crime, contraband, fruits of a crime, and other items illegally possessed in violation of:

- Title 18, United States Code, Section 2251(a) – Sexual Exploitation of children;
- Title 18, United States Code, Section 2252 (Production and Distribution of Child Exploitation Material);
- Title 18, United States Code, Section 2252A (Distribution and Possession of Child Exploitation Material); and

are currently located at 5774 Hirondel, Street, Houston, Texas 77033. The evidence of a crime, contraband, fruits of a crime, and other items illegally possessed in violation of the aforementioned statute include, but are not limited to, computers, computer-related equipment, digital storage media, and visual images depicting minors engaged in sexual activity.

**C.  Statutory Authority:**

4.      This investigation concerns alleged violations of Title 18, United States Code, Section 2251, 2252 and 2252A, summarized as:

- 18 U.S.C. § 2251(a) – Sexual Exploitation of children
- 18 U.S.C. § 2252 (a)(2) – Production and Distribution of Child Exploitation Material
- 18 U.S.C. § 2252A(a)(2) – Distribution of Child Exploitation Material
- 18 U.S.C. § 2252A(a)(5) – Possession of Child Exploitation Material

Further defined and detailed below:

- Title 18 U.S.C. § 2251(a)

   (a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to

engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce…

- Title 18 U.S.C. § 2252

(a) Any person who –

(1) Knowingly transports or ships using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including computer or mails, any visual depiction, if—

    (A) The producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

    (B) Such visual depiction is of such conduct;

(2) knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, if—

    (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

    (B) such visual depiction is of such conduct;

- Title 18 U.S.C. § 2252A

(a) Any person who—

(2) knowingly receives or distributes—

    (A) any child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or

affecting interstate or foreign commerce by any means, including by computer; or (B) any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer;

(5)    (B) knowingly possesses, or accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer;

- Title 18 U.S.C. § 2256(8) defines "child pornography" as any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where--

    (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

    (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or

    (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.


- Title 18 U.S.C. § 2256(2)(A) defines "sexually explicit conduct" as actual or simulated--

    (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

    (ii) bestiality;

    (iii) masturbation;

    (iv) sadistic or masochistic abuse; or

    (v) lascivious exhibition of the anus, genitals or pubic area of any person.

4

- Title 18 U.S.C. § 2422

  (b)      Whoever, using the mail or any facility or means of interstate or foreign commerce,

  > or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so,

  shall

  > be fined under this title and imprisoned not less than 10 years or life.

- Title 18 U.S.C. § 2256 (6) / 18 U.S.C. § 1030(e)(1)

  "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high-speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, and mobile phones and devices.  See 18 U.S.C. § 1030(e)(1).

**D.      Background on Computers and Child Pornography:**

5.      Computers and computer technology have revolutionized the way in which individuals interested in child pornography interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. There were definable costs involved with the production of pornographic images. To distribute these on any scale required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls. Any reimbursement would follow these same paths.

6.      The development of computers has changed this. Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

7.   People involved in child pornography can now transfer photographs from a camera onto a computer-readable format with a device known as a scanner. With the advent of digital cameras, the images can now be downloaded directly onto a computer. Individuals can also reproduce both still and moving images directly from a common video camera. The camera is attached, using a cable, directly to the computer using a device called a video capture board. This device turns the video output into a format that is usable by computer programs. The output of the video camera can be stored, manipulated, transferred, or printed directly from the computer.

8.   The captured images are similar to photographs. The images can be printed, edited, lightened, darkened, cropped, and manipulated in a wide variety of ways. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. There is an added benefit to the individual involved in child pornography in that this method of production does not leave as large a trail for law enforcement to follow as other methods.

9.   Previously, as a general matter, a person involved in child pornography had to rely on personal contact, United States Mail, and telephonic communications in order to sell, trade, or market child pornography. The development of the computer has also changed that. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. By connection to a host computer, electronic contact can be made to literally millions of computers around the world. A host computer is one that is attached to a dedicated network and serves many users. These host computers are sometimes commercial online services which allow subscribers to dial a local number and connect to a network, which is in turn connected to its host systems. Peer-to-peer software can be used to trade computer files, including digital images and pictures. The software allows users to download files that others, on the same peer-to-peer network, are sharing. Specific criteria can be used to sort through millions of shared files, somewhat anonymously, to download and/or trade images and/or videos of child pornography. This communication structure is ideal for the child pornography collector, possessor, or producer.

10.   The open and anonymous communication allows the user to locate others of similar inclination and still maintain their anonymity. Once contact is established, it is possible to

send messages and graphic images to a trusted person with similar interests. In addition to the use of large service providers, pornographers can use standard Internet connections, such as those provided by businesses, universities, and government agencies to communicate with each other and distribute pornography. These communication links allow contacts around the world in a relatively secure and anonymous format.

11.     The computer's ability to store images in digital format makes the computer itself an ideal repository for pornography. A single CD can store thousands of images and pages of text. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last years. Hard drives with a capacity of more than 500 gigabytes are common. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, to process that image in a computer with a video capture board, and to save that image to a storage medium in another location. Once this is done, there is no readily apparent evidence at the scene of the crime. It is only with careful laboratory examination of electronic storage devices that it might be possible to recreate the evidence trail.

12.     The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution of child pornography. This pornography can be electronically mailed to anyone with access to a computer and the means to access the Internet. With the proliferation of commercial services and chat services, the computer has become one, if not the preferred, method of distribution of pornographic materials.

13.     A computerized depiction of child pornography is often stored and referred to as a GIF, short for Graphic Interchange Format, or a JPEG, short for Joint Photographic Experts Group. These image files often contain images or photographs that have been converted into a computer format by the use of a scanner. A single image may be recorded as a single computer file. However, a file may contain two or more images (sometimes more than 100), and these files are often referred to as ZIP files, referring to their compressed archive format. Another type of file is called an MPEG, short for Moving Picture Experts Group. An MPEG is a file containing a movie or video clip.

14.     An Internet Protocol (IP) address is a unique number that devices such as computers,

routers, internet fax machines, printers, etc. use in order to identify and communicate with each other over a network. Each device must have its own unique IP address. An IP address can be thought of like a street address. Just as a street address identifies a particular building an IP address identifies a particular computer or network device. When a user logs on to his/her Internet Service Provider (ISP) they are assigned an IP address for the purpose of communication over the network. ISPs keep records of who IP addresses are assigned to by date and time. When served with a subpoena ISPs can provide the computer account associated with a designated IP address at a particular date and time.

**E.      Social Networking Sites and Instagram Background**

15.     "Social networking" or "social network service" is a term used to describe applications or websites which focus on establishing networks or relationships among individual users based on interests or activities. These services typically consist of a personal online representation of an individual, often referred to as a profile, a list of other individuals with which a person has interests are allowed to view their profile, and a variety of other capabilities, such as the upload and sharing of images and videos. Newer capabilities allow access to the social networks via mobile devices such as cellular telephones and the upload of real-time information to an individual's profile. Most, if not all, of the social networks are accessible via the Internet and allow a member to contact other members via electronic mail (e-mail), instant messaging, or comments placed directly to a member's profile. Normally, information posted by individuals to their own or another individual's profiles are not vetted for accuracy or content.

16.     Instagram owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com. Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information. Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device. Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. In

addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram. Users can also "like" photos. Instagram allow users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

17.     Social networking platforms encourage "sharing" through an inherent scoring system, such as tracking the "views" or "likes" associated with each "post", "share", or transmission of digital media. Due to this scoring system, users are encouraged and rewarded for posting new material. This reward system causes users to transmit material through the Internet that otherwise would not be shared, such as child exploitation material.

**F.     Characteristics of an Individual with Sexual Interest in Children:**

18.     My training, experience, and discussions with other investigators who have investigated child pornography and the exploitation of children for many years, have taught me that persons who have a sexual interest in children and/or who produce, trade, distribute, or possess depictions of minors engaged in sexually explicit conduct generally exhibit the following characteristics:

  a.     These people view children as sexual objects and receive gratification from sexually explicit images of minors.

  b.     These people collect sexually explicit images of minors that they use for their own sexual gratification and fantasy. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel these individuals' deviant sexual fantasies involving children.

  c.     My training, experience, and discussions with other investigators have further taught me that these people tend to keep their images for periods exceeding several years. They keep these sexually explicit images of minors for such long periods of time because the images are treated as prized possessions. They store such images in different formats including photos, printouts, magazines,

videotapes, and digital media formats such as hard drives, diskettes, and CDs. In addition, they store such images in different places, including their home, their office, their car, and other areas under their control.

d.      These people use sexually explicit images of minors as a means of reliving fantasies or actual sexual encounters. They also use the images as keepsakes and as a means of gaining acceptance, status, trust, and psychological support by exchanging, trading, or selling the images to other people with similar interests either in person or via the Internet. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, e-mail, e-mail groups, bulletin boards, Internet Relay Chat, newsgroups, instant messaging, and other similar vehicles.

e.      Because child exploitation material is precious to persons with sexual interest in children, the material will be retained in various formats so they can revisit the material to relive their fantasies. Additionally, the material is treated as a commodity and will be traded with other pedophiles to obtain new images or videos of child exploitation. For these reasons, both for sexual gratification and trading, pedophiles store and retain child exploitation material in safe places for quick retrieval and immediate access, usually in their home, on their person, in their vehicle or on a digital media storage service also known as a "cloud" service, which is a remote computer storage service such as Apple, Google or Amazon.

f.      These people go to great lengths to conceal and protect from discovery their collection of sexually explicit images of minors. They may have passwords used to access programs or control encryption written down either in the vicinity of their computer or on their person (for instance, in their wallet or an address book).

g.      These people maintain images of minors with whom they have had sexual contact. If a picture of a minor is taken by such a person depicting the minor in the nude, there is a high probability that the minor was used to produce sexually explicit images to be traded with people with similar interests.


**G.      Probable Cause and Supporting Determinations:**

19.  On Friday, June 26, 2020 at approximately 1:54 a.m., officers with the Port Arthur Police (Texas) Department responded to a residence in Port Arthur as a result of a report of a twelve-year old runaway (hereinafter "Minor"). Pt. Arthur is within the Eastern District of Texas. Upon arrival, officers met with the mother of the Minor who stated that a little after 12:30 a.m., another one of her daughters informed her that the Minor had left the house. The Minor had a tablet that she accessed "Instagram" from which was left in the house. Family members, including the Minor's mother, reviewed the contents of the tablet and observed that the Minor had several messages exchanged with another account appearing to be a male subject using the name "cajunlxrd". Some of the messages were making plans to meet, and go to a "room." Some of the other messages were suggestive and sexual in nature. The male subject stated that he had purchased a room. In one message, the Minor referred to the subject as "Malcolm".

20.  Prior to the arrival of the police, the sister of the Minor, using the Minor's tablet, messaged the male subject on Instagram. She asked where her sister was, and to bring her home. While the responding officers were at the residence, the subject responded with a video message of an individual matching the Minor's description performing oral sex on an African American male who appears to be an adult. There were no other communications on the tablet concerning the whereabouts or welfare of the Minor.

21.  At approximately 4:00 a.m. officers were informed that the Minor had returned home. The Minor matched the description of the female observed in the video message. The Minor admitted to her mother that she had sexual intercourse and performed oral sex on the individual she was with.

22.  Through the investigation it was learned that the location where the sexual intercourse occurred was the Roadway Inn & Suites, located at 3838 Highway 73 in Port Arthur Texas room number 215. Investigators spoke with the clerk and confirmed that room 215 had been rented on June 25, 2020 to June 26, 2020. The clerk provided a copy of the invoice. The invoice showed the room was booked by "Malcolm Tyrone Comeaux", ID number 40029645, and an address of 5774 Hirondel Street, Houston, Texas 77033.

23.    I reviewed surveillance footage from the Roadway Inn & Suites recorded on June 26, 2020 and observed that at approximately 1:03 a.m., Comeaux, who was wearing a blue shirt carrying a bag, entered room 215 with the Minor. I observed Comeaux and the Minor leaving the room together at approximately 3:25 a.m. Comeaux was carrying a bag with him. I recognized Comeaux from a review of his Texas Driver's License photograph.

24.    A review of the media collected from the Minor's Instagram account from her device revealed multiple photos of Comeaux. One photo showed Comeaux with a firearm and another photo showed him with a sword. One of the Instagram messages from "cajunlxrd" to the Minor stated, "Also we gonna record but I'll put a emoji over our faces". A video from the Minor's Instagram account sent from "cajunlxrd" was captured of the Minor performing oral sex on an African American male who appears to match the physical appearance of Comeaux. The person using the "cajunlxrd" Instagram account sent telephone number "346-279-6298" to the Minor's account. A subpoena to T-Mobile USA, Inc. confirmed the telephone number subscriber is "Malcolm Comeaux."

25.    On July 1, 2020, the Minor participated in a Forensic Interview at the Garth House. The Minor identified the suspect as "Malcolm" and stated he was 24 years of age. She did not know his last name. The Minor said she had been talking to Malcolm for a few months online, but the only time she met him in person was on June 26, 2020 when he picked her up at her house. The Minor said that Malcolm was in a dark colored 4 door car. They drove to the hotel and entered room number 215. The Minor stated that they had both sexual intercourse and oral sex on that occasion. The Minor confirmed that Malcolm recorded her performing oral sex on him with his cell phone, claiming that it was for his personal pleasure. The Minor stated that Malcolm put the video on Instagram. The Minor stated that Malcolm had sent her explicit pictures on Instagram prior to the night they met.

26.    On July 13, 2020, a Port Arthur Police Department detective conducted a telephonic interview of Comeaux. Comeaux admitted he had sexual intercourse with the Minor but stated she told him she was 17 years old. He admitted to producing a video recording of

the sexual intercourse with the Minor, but did not elaborate on how or what he did with the video.

27. At some point in the afternoon of July 13, 2020, the Instagram account associated with Malcolm Comeaux was no longer accessible by investigators, indicating the account was deactivated by the user. Affiant believes that when a subject of an investigation changes behavior, and furthermore, the subject deletes social media accounts used in the alleged crime, this behavior is usually indicative of someone trying to hide evidence of a crime. Affiant believes that subjects who try to hide some evidence will also attempt to delete digital evidence. However, Affiant also knows that simply deleting an image or video from a digital device does not actually delete the digital media. In actuality, when a user chooses to delete a file, the action only deletes the reference in the operating system to that file, but the file remains stored on the device until that section of memory is written over by new data, which usually happens much later. Even when some storage is written over, other remnants of the file remain and can be recovered by forensic examiners. Additionally, the digital images and videos are only part of the evidence. The search also seeks to obtain the digital devices identified by the Minor victim as corroboration of the sexual encounter and crime, such as a cellular telephone with a camera, tablets or computer devices or other storage media. Examinations of these digital devices, in addition to actual or remnants of child exploitation material, will also have evidence of communications with the Minor, through text messages and social media. The search also seeks to obtain evidence corroborating the description of events as provided by the Minor, including any physical or forensic evidence that is likely present in the associated vehicle.

## H.    Summary of Probable Cause related to Premises

28. Affiant believes the premises (5774 Hirondel Street, Houston, Texas 77033), further identified in Attachment A, is the residence of Comeaux and the location where evidence of the federal violations is stored, due to the following:

- The Minor identified the adult male depicted in the sexually explicit video as Malcolm Tyrone Comeaux (Comeaux).

- The Minor also stated that Comeaux created a sexually explicit video depicting the Minor, using his own cellular telephone, a digital device with a camera. Affiant knows these devices are usually kept on or near a person at all times.

- The Texas Driver's License records revealed the associated address listed on Malcolm Tyrone Comeaux's driver's license, number 40029645, as the premises, 5774 Hirondel Street, Houston, Texas 77033.

- The alleged crimes occurred at a hotel. The invoice from the hotel, the location where the crimes occurred, showed the room was booked by "Malcolm Tyrone Comeaux". During registration, he provided ID number 40029645 and the premises address of 5774 Hirondel Street, Houston, Texas 77033. The ID number provided during registration is Comeaux's Texas Driver's License number.

- Tax appraisal records available online show the current registered owner of the premises as the estate of Mary L. Comeaux.

- Investigative database searches revealed Mary L. Comeaux died in March 2013 and was likely Malcolm Comeaux's grandmother. According to the database searches, another likely occupant of the premises was identified as Mary Dolores Comeaux, which is likely Malcolm Comeaux's mother.

- Surveillance at the premises identified two vehicles parked in the driveway of the premises (pictured in the photograph in Attachment A) with Texas license plates MBV0250 and FWG1603. A check of Texas vehicle registration records revealed the following:
  - MBV0250 was a blue 2014 Nissan Sentra (matching the description of the vehicle provided by the Minor) registered to owner Malcolm Tyrone Comeaux and Mary D Comeaux at "5774 Hirondal St,, Houston, Tx 77033".
  - FWG1603 was a 2006 Chevrolet registered to owner Mary D Comeaux at "5774 Hirondel St,, Houston, Tx 77033".

- The billing address for Comeaux T-Mobile account, 346-279-6298, was listed as 5774 Hirondel Street, Houston, Texas 77033

I.    **Conclusion:**

29.  Finally, based upon the conduct of individuals who have a sexual interest in children, as set forth in paragraph 18, namely that they tend to maintain their collections at private locations for long periods of time, there is probable cause to believe that evidence of the offenses of distributing, receiving, possessing, and the production of child pornography is currently located at 5774 Hirondel Street, Houston, Texas 77033. I believe Malcolm Tyrone COMEAUX has demonstrated these offender characteristics, based on not only the account of events provided by the Minor, but also the video depicting child pornography found on the Minor's tablet which was produced and transmitted by Comeaux.

30.  In consideration of the foregoing, I respectfully request that this court issue a search warrant for the premises known as 5774 Hirondel Street, Houston, Texas 77033, authorizing the search of the aforementioned premises described in Attachment A for the items described in Attachment B and the seizure of such items for the purpose of searching and analyzing them.

Tony P. Cattelan
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to telephonically on this 17th day of July 2020.

Peter Bray
United States Magistrate Judge

ATTACHMENT A

**LOCATION TO BE SEARCHED**

5774 Hirondel Street, Houston, Texas 77033, is a 1,245 square foot single family home with double garage doors, located on the south side of Hirondel Street. 5774 Hirondel Street, Houston, Texas 77033 is located in Harris County in the Southern District of Texas. There is a vehicle registered to the residence, more particularly described as a blue 2014 Nissan Sentra, Texas license plate MBV0250, that, if found at the residence, will be subject to search and seizure during execution of the search warrant.

Below is a photo taken by Agents of the premises on July 9, 2020 depicting the residence and the vehicle to be searched if found on the premises:



Below is a screenshot of the property search results from Harris County Appraisal District:

## Real Property Records

| Tax Year: 2020 | HARRIS COUNTY APPRAISAL DISTRICT<br>REAL PROPERTY ACCOUNT INFORMATION<br>0911370000010 | Print  E-mail |
|---|---|---|

File A Protest | Similar Owner Name | Nearby Addresses | Same Street Name | Related Map 5453D

**Ownership History | Related Accounts**

| Owner and Property Information | | |
|---|---|---|
| Owner Name &<br>Mailing Address: | COMEAUX MARY L ESTATE OF<br>5774 HIRONDEL ST<br>HOUSTON TX 77033-2302 | Legal Description: | TR 10 BLK 17<br>EDGEWOOD TERRACE SEC 4<br>Property Address: | 5774 HIRONDEL ST<br>HOUSTON TX 77033 |

| State Class Code | Land Use Code |
|---|---|
| A1 -- Real, Residential, Single-Family | 1001 -- Residential Improved |

| Land Area | Total Living Area | Neighborhood | Neighborhood<br>Group | Market Area | Map Facet | Key Map® |
|---|---|---|---|---|---|---|
| 3,543 SF | 1,245 SF | 8419 | 1312 | 132 -- 1C South of Old Spanish Trail btwn SH 288 and I-45 | 5453D | 574A |

| Value Status Information | | |
|---|---|---|
| Value Status | Notice Date | Shared CAD |
| Noticed | 03/31/2020 | No |

| Exemptions and Jurisdictions | | | | | | | |
|---|---|---|---|---|---|---|---|
| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2019 Rate | 2020 Rate | Online<br>Tax Bill |
| **None** | 001 | HOUSTON ISD | | Not Certified | 1.136700 | | |
| | 040 | HARRIS COUNTY | | Not Certified | 0.407130 | | |
| | 041 | HARRIS CO FLOOD CNTRL | | Not Certified | 0.027920 | | |
| | 042 | PORT OF HOUSTON AUTHY | | Not Certified | 0.010740 | | |
| | 043 | HARRIS CO HOSP DIST | | Not Certified | 0.165910 | | |
| | 044 | HARRIS CO EDUC DEPT | | Not Certified | 0.005000 | | |
| | 048 | HOU COMMUNITY COLLEGE | | Not Certified | 0.100263 | | |
| | 061 | CITY OF HOUSTON | | Not Certified | 0.567920 | | |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at HCAD's **information center at 13013 NW Freeway.**

| Valuations | | | |
|---|---|---|---|
| Value as of January 1, 2019 | | Value as of January 1, 2020 | |
| | Market | Appraised | | Market | Appraised |
| Land | 13,286 | | Land | 14,615 | |
| Improvement | 61,099 | | Improvement | 65,702 | |
| Total | 74,385 | 74,385 | Total | 80,317 | 80,317 |

**5-Year Value History**

| Land | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Market Value Land | | | | | | | | | |
| Line | Land Use | Unit<br>Type | Units | Size<br>Factor | Site<br>Factor | Appr O/R<br>Factor | Appr O/R<br>Reason | Total<br>Adj | Unit<br>Price | Adj Unit<br>Price | Value |
| 1 | 1001 -- Res Improved Table Value<br>SF1 = Primary SF | SF | 3,543 | 1.50 | 1.00 | 1.00 | -- | 1.50 | 2.75 | 4.13 | 14,615.00 |

| Building | | | | | | |
|---|---|---|---|---|---|---|
| Building | Year Built | Type | Style | Quality | Impr Sq Ft | Building Details |
| 1 | 1956 | Residential Single Family | 101 -- Residential 1 Family | Average | 1,245 * | Displayed |

* All HCAD residential building measurements are done from the exterior, with individual measurements rounded to the closest foot. This measurement includes all closet space, hallways, and interior staircases. Attached garages are not included in the square footage of living area, but valued separately. Living area above attached garages is included in the square footage living area of the dwelling. Living area above detached garages is not included in the square footage living area of the dwelling but is valued separately. This method is used on all residential properties in Harris County to ensure the uniformity of square footage of living area measurements district-wide. There can be a reasonable variance between the HCAD square footage and your square footage measurement, especially if your square footage measurement was an interior measurement or an exterior measurement to the inch.

**Building Details (1)**

| Building Data | |
|---|---|
| Element | Details |
| Cond / Desir / Util | Average |
| Foundation Type | Slab |
| Grade Adjustment | C |
| Heating / AC | Central Heat/AC |
| Physical Condition | Average |
| Exterior Wall | Frame / Concrete Blk |
| Element | Units |
| Room: Total | 6 |
| Room: Half Bath | 1 |
| Room: Full Bath | 1 |
| Room: Bedroom | 3 |
| Masonry Trim | 1 |

| Building Areas | |
|---|---|
| Description | Area |
| BASE AREA PRI | 1,245 |
| OPEN FRAME PORCH PRI | 28 |
| FRAME GARAGE PRI | 456 |

2

Below is a Google Maps image of the residence from 2011:



ATTACHMENT B

**PROPERTY TO BE SEIZED**

a.      Any and all tapes, cassettes, cartridges, streaming tape, video tape, commercial software and hardware, computer related documentation, computer usernames and passwords, computers, hard drives, computer disks, CDs, DVDs, memory storage devices, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, gaming devices, electronic mail, tape systems, routers, digital records stored on any electronic device, and other computer-related operation equipment, in addition to computer photographs, Graphic Interchange formats and/or photographs, film cameras, digital cameras, video cameras, camera phones, internet or data storing capable phones, slides, scanners, other digital, photographic, or video recording devices, other digital or video recording players, or other visual depictions of such Graphic Interchange format equipment which may be, or are used to visually depict child pornography, child erotica, information pertaining to the sexual interest in child pornography, sexual activity with children or the distribution, possession or receipt of child pornography, child erotica or information pertaining to an interest in child pornography or child erotica.

b.      In any format and medium, all originals and all copies of negatives, computer files that depict digital photographs, film photographs, film, and all visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica or pertaining to a sexual interest in children.

c.      Any and all notes, documents, diaries or correspondence, in any format or medium (including envelopes, letters, papers, e-mail messages, chat logs, and electronic messages, other digital files, and handwritten notes) pertaining to the possession, transmission through interstate commerce including by United States Mails or by computer, receipt, or distribution of child pornography or the visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica or pertaining to a sexual interest in children, whether transmitted or received using computer, a facility or means of interstate commerce, common carrier, or mail.

d.      Any and all books, magazines, and ledgers pertaining to the possession, receipt, distribution, production, reproduction, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission, through interstate commerce including by United States Mails or by computer, of child pornography or the visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica or pertaining to a sexual interest in children, whether transmitted or received using computer, a facility or means of interstate commerce, common carrier, or mail.

e.      Any and all address books, mailing lists, names, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition

of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States Mails or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica or pertaining to a sexual interest in children.

f.   Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica or pertaining to a sexual interest in children.

g.   Any and all notes, documents, records, diaries or correspondence, in any format or medium (including envelopes, letters, papers, e-mail messages, chat logs, and electronic messages, other digital files and handwritten notes) reflecting personal contact, communications, and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica or pertaining to a sexual interest in children.

h.   Any and all notes, documents, records, diaries or correspondence, in any format or medium (including envelopes, letters, papers, e-mail messages, chat logs, and electronic messages, other digital files and handwritten notes) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

i.   Any and all notes, documents, records, diaries or correspondence, in any format or medium (including envelopes, letters, papers, e-mail messages, chat logs, and electronic messages, other digital files and handwritten notes) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

j.   Any and all records, documents, invoices and materials, in any format or medium (including envelopes, letters, papers, e-mail messages, chat logs, and electronic messages, other digital files and handwritten notes) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

k.   Any and all documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the premises described above and ownership of the Internet Service Provider, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, internet service provider bills, mail envelopes, or addressed correspondence.

l.   Physical evidence related to the sexual abuse of a child including sexual devices, lubricants, child's clothing/underwear, bondage and discipline paraphernalia, and any other items used to sexually or physically abuse or exploit a child in violation of federal law.

m.   Physical evidence related to the sexual abuse of a child including forensic and biological evidence such as hairs, fibers, body fluids, blood, semen, saliva, skin cells, latent fingerprints, and other evidence demonstrating the sexual abuse of a child.

n.   Physical evidence related to correspondence with other persons or groups interested in sexual behavior with children, and any and all diaries or other records related to child sexual partners, including phone or address books in which the suspects have recorded names, addresses, and phone numbers of child sexual partners.

o.   Any and all physical evidence depicted in the sexually explicit images.

3